UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL NO. 325 PENSION FUND, by
James F. Collins and Kimberly A. Bautista, as Trustees;
INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL NO. 325 JOINT TRUST FUND, by
James F. Collins and Kimberly A. Bautista, as Trustees;
INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL NO. 325 ANNUITY FUND, by
James F. Collins and Kimberly A. Bautista, as Trustees;
INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL NO. 325 JOINT APPRENTICESHIP
TRAINING COMMITTEE FUND, by James F. Collins
and Kimberly A. Bautista, as Trustees; LOCAL UNION
NO. 325, INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS AND EMPLOYERS
COOPERATIVE TRUST FUND, by James F. Collins
and Kimberly A. Bautista, as Trustees; NATIONAL
ELECTRICAL BENEFIT FUND, by Ben Cook and
Edwin D. Hill, as Trustees; NECA-IBEW NATIONAL
LABOR-MANAGEMENT COOPERATION
COMMITTEE TRUST FUND, by Ben Cook and Edwin
D. Hill, as Trustees; SOUTHERN TIER CHAPTER -
NECA, by Kimberly A. Bautista, Chapter Manager; and
INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL UNION NO. 325, by James F.
Collins, Business Manager,

                                                              Plaintiffs,

                                    v.                                                       5:09-CV-800
                                                                                            (FJS/DEP)

M. GLEASON & SONS OF BINGHAMTON, NY, INC.
and ROBERT M. GLEASON, JR., individually and as
an Officer of M. Gleason & Sons of Binghamton, NY, Inc.,

                                                              Defendants.
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **BLITMAN & KING LLP**<br>Franklin Center, Suite 300<br>443 North Franklin Street<br>Syracuse, New York 13204<br>Attorneys for Plaintiffs | **JENNIFER A. CLARK, ESQ.** |
| **M. GLEASON & SONS OF BINGHAMTON, NY, INC.**<br>129 Sheedy Road<br>Vestal, New York 13850<br>Defendant | **NO APPEARANCE** |
| **ROBERT M. GLEASON, JR.**<br>129 Sheedy Road<br>Vestal, New York 13850<br>Defendant | **NO APPEARANCE** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

In this action, Plaintiffs seek to recover the delinquent fringe benefit contributions, deductions, interest, liquidated damages, costs and disbursements, and attorney's fees due and owing to them under the parties' contracts, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C § 1001 *et seq.,* and Section 301(a) of the Labor Management Relations Act of 1947("LMRA"), as amended, 29 U.S.C. § 185(a).

Currently before the Court is Plaintiffs' motion, pursuant to Rule 55 of the Federal Rules of Civil Procedure, for entry of a default judgment against Defendants in the amount of $252,530.28 plus post-judgment interest at the rate provided for in 28 U.S.C. § 1961(a).

## II. BACKGROUND

Plaintiffs commenced this action on July 13, 2009. *See* Dkt. No. 1. On July 27, 2009, Plaintiffs served the summons and complaint on both Defendants. *See* Dkt. No. 6. On August 18, 2009, Defendants submitted an answer to the complaint. *See* Dkt. No. 8.

On December 14, 2011, the Court accepted Magistrate Judge Peebles' Report and Recommendation and struck Defendants' answer to the complaint for failure to abide by the Court's discovery-related Order and entered a default judgment against both Defendants on the issue of liability. *See* Dkt. Nos. 26, 30, 32.

Defendant M. Gleason & Sons of Binghamton, NY, Inc. ("Defendant Corporation") is a party to a collective bargaining agreement with the International Brotherhood of Electrical Workers, Local Union No. 325 (the "Agreement"). Pursuant to the provisions of the Agreement, Defendant Corporation is obligated to remit fringe benefit contributions and deductions to Plaintiffs. Defendant Robert M. Gleason, Jr., officer of Defendant Corporation owned, controlled and dominated the affairs of Defendant Corporation and determined when, and if, to remit fringe benefit contributions and deductions to Plaintiffs.

Pursuant to the Agreement, Defendant Corporation is bound by the rules and regulations of Plaintiff Funds' Board of Trustees and the terms and conditions of the Agreements and Declarations of Trust of the International Brotherhood of Electrical Workers Local No. 325 Pension Fund, International Brotherhood of Electrical Workers Local No. 325 Joint Trust Fund, International Brotherhood of Electrical Workers Local No. 325 Annuity Fund, International Brotherhood of Electrical Workers Local 325 Joint Apprenticeship Training Committee Fund, Local Union 325, International Brotherhood of Electrical Workers and Employers Cooperative

Trust Fund, National Electrical Benefit Fund, NECA-IBEW National Labor-Management Cooperation Committee Trust Fund, and the Local No 325 Funds' Collection Policy. The Agreements and Declarations of Trust, the Collection Policy, the Agreement, the LMRA, and ERISA obligate Defendant Corporation, if it is delinquent in remitting contributions and deductions, to pay interest, the greater of interest or liquidated damages, costs and fees of collection, audit fees, and attorney's fees.

According to Plaintiffs, during the month of March 2007 and the period August 2008 through September 2009, Defendants failed to remit fringe benefit contributions and deductions to Plaintiffs on time. Therefore, Plaintiffs commenced the present action on July 13, 2009, seeking to collect those delinquent fringe benefit contributions and deductions as well as interest, liquidated damages, costs and fees of collection, and attorney's fees.

### III. DISCUSSION

**A.      Standard of review**

When a court considers a motion for the entry of a default judgment, it must "accept[] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted). However, the court cannot construe the damages alleged in the complaint as true. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citations omitted). Rather, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (citation omitted). This inquiry "involves two tasks: [1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this

rule." *Id.* Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

Section 1145 of Title 29 of the United States Code provides that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

If an employer violates § 1145, 29 U.S.C. § 1132(g)(2) provides that,

> [i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –
>
>> (A) the unpaid contributions,
>> (B) interest on the unpaid contributions,
>> (C) an amount equal to the greater of –
>>> (i) interest on the unpaid contributions, or
>>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g).

Defendant Corporation is an employer obligated to make contributions into the benefit plans under the Agreement and failed to make those required payments. Therefore, the Court will apply the provisions of § 1132(g)(2) to calculate Plaintiffs' damages.

**B.     Calculation of Plaintiffs' damages**

*1. Unpaid contributions and dues*

Plaintiffs have submitted evidence to establish that Defendants owed $335,769.30 in contributions and deductions to Plaintiffs. Defendants subsequently remitted $315,591.72; thus they currently owe Plaintiffs **$20,177.58** in contributions and deductions. *See* Affidavit of Jennifer A. Clark sworn to January 23, 2012 ("Clark Aff.") at ¶ 13 (citing Spicer Aff., ¶¶ 23-24; Schultz Aff., ¶¶ 9-10, 12; Condie Aff., ¶¶ 12-13, 15; DeMacy Aff., ¶¶ 7, 9-11). Accordingly, the Court awards Plaintiffs this amount as part of their damages award.

*2. Interest on unpaid contributions and dues*

Under Plaintiff Funds' Agreements and Declarations of Trusts, Plaintiff IBEW 325 Funds' Collections Policy, and Plaintiffs' rules, Defendants, if they are delinquent in remitting contributions and deductions, are liable for interest on those unpaid contributions and dues at the rate of two percent (2%) per month with respect to the Annuity Fund, Pension Fund, Joint Trust Fund, Training Fund and Local Union No. 325, International Brotherhood of Electrical Workers and Employers Cooperative Trust Fund ("LMCC") (hereinafter collectively "IBEW 325 Funds"); ten percent (10%) per annum compounded monthly with respect to NEBF contributions; one and one-half percent (1.5%) per month with respect to AMF contributions; ten percent (10%) per

annum with respect to the NLMCC monies; and nine percent (9%) per annum with respect to Local Union No. 325 dues deductions and COPE monies. *See* Affidavit of Linda L. DeMacy sworn to December 20, 2011, at ¶ 5 (citing Clark Aff., Exh. "A", ¶ 27; Condie Aff., ¶ 11; Spicer Aff., ¶ 16; Schultz Aff., ¶ 7). Based on these figures, Plaintiffs have submitted evidence that Defendants owe them **$57,307.71** in interest through March 1, 2012. *See id.* at ¶ 10 & Exhibits "A" and "B" attached thereto). Accordingly, the Court awards Plaintiffs this amount as part of their damages award.

### *3. Liquidated damages*

Plaintiffs submitted evidence that Defendants owe them **$77,172.71** in liquidated damages. *See* DeMacy Aff. at ¶¶ 5, 10 & Exhibits "A" and "B" attached thereto. Accordingly, the Court awards Plaintiffs this amount as part of their damages award.

### *4. Audit fees*

Plaintiffs submitted evidence that Defendants owe them **$18,010.20** in audit fees. *See* Clark Aff. at ¶ 17 (citing McCarthy Affidavit, Exh. "B," audit bills). Accordingly, the Court awards Plaintiffs this amount as part of their damages award.

### *5. Attorney's fees and costs*

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit abandoned the use of the term "lodestar" when calculating an award of attorney's fees. *See id.* at 190 at n.4 (noting, however, that it did "not purport to require

future panels of this court to abandon the term – it is too well entrenched . . . ."). In its place, the court stated that it thought that

> the better course – and the one most consistent with attorney's fees jurisprudence – [was] for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that [this] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.

*Id.*

The court then defined the term "reasonable hourly rate" as "the rate a paying client would be willing to pay." *Id.* The court explained that, "[i]n determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors;[1] it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* Finally, the court instructed that "[t]he district court should . . . use th[e] reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.'" *Id.*

---

[1] The *Johnson* factors are as follows:

> (1) [t]he time and labor required[;] . . . (2) [t]he novelty and difficulty of the questions[;] . . . (3) [t]he skill requisite to perform the legal service properly[;] . . . (4) [t]he preclusion of other employment by the attorney due to acceptance of the case[;] . . . (5) [t]he customary fee[;] . . . (6) [w]hether the fee is fixed or contingent[;] . . . (7) [t]ime limitations imposed by the client or the circumstances[;] . . . (8) [t]he amount involved and the results obtained[;] . . . (9) [t]he experience, reputation, and ability of the attorneys[;] . . . (10) [t]he "undesirability" of the case[;] . . . (11) [t]he nature and length of the professional relationship with the client[;] . . . [and] (12) [a]wards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

Moreover, as the Second Circuit explained in *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.2d 204 (2d Cir. 2005), "the equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Id.* at 209. This inquiry "may . . . include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Id.* (citations omitted). However, the court must also evaluate the evidence that the parties proffer, keeping in mind that "the fee applicant has the burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the requested hourly rates are the prevailing market rates." *Id.* (citation omitted). Finally, the Second Circuit has held that "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84, 109 S. Ct. 2463, 2469-70, 105 L. Ed. 2d 229 (1989)).

Plaintiffs assert that the Agreements and Declarations of Trust contractually obligate Defendants to pay all attorney's fees and paralegal fees incurred in the collection of Defendants' delinquent contributions. *See* Clark Aff. at ¶ 15 (citing Spicer Aff., Exh. "A", p. 14; Exh. "B", p. 14; Exh. "C", p. 15; Exh. "D", pp. 16-17; Exh. "E", p. 19). Furthermore, Plaintiffs contend that, pursuant to the IBEW 325 Funds' Collections Policy, Defendants are contractually liable to pay all attorney's fees and costs that the Funds incur for all services performed in connection with the collection of delinquent amounts, whether those services are performed in connection with a court proceeding or not. *See id.* at ¶ 16 (citing Spicer Aff., Exh. "H", p. 3).

Plaintiffs have submitted evidence that they incurred $77,166.70 in attorney's fees during

the period from December 1, 2008, through January 10, 2012. *See id.* at ¶ 17. By Order dated December 14, 2011, *see* Dkt. No. 32, the Court awarded Plaintiffs $3,600.10 in attorney's fees in connection with their motion for sanctions. Therefore, Plaintiffs are now seeking **$73,566.60** in attorney's fees for work counsel performed through January 10, 2012. *See id.* & Exhibit "E" attached thereto.

The Court has reviewed the contemporaneous time records of Plaintiffs' counsel and finds that both the hours of work and the hourly rates are reasonable. Therefore, the Court awards Plaintiffs $73,566.60 in attorney's fees as part of their damages award.

Plaintiffs are also entitled to recover the costs associated with this litigation, including copying costs, filing fees, postage and delivery costs relating to service of the complaint, and research costs. According to their submissions, Plaintiffs have expended $6,746.72 on such items. By Order dated December 14, 2011, the Court awarded Plaintiffs $451.24 in costs in connection with their motion for sanctions. Therefore, Plaintiffs now seek **$6,295.48** in litigation costs. *See* Clark Aff. at ¶ 18 & Exhibit "E" attached thereto. Therefore, the Court awards them this amount for their litigation costs as part of their damages award.

## IV. CONCLUSION

Accordingly, after reviewing Plaintiffs' submissions, the relevant law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Clerk of the Court shall enter a default judgment in favor of Plaintiffs

and against Defendants in the amount of **$252,530.28** as calculated herein[2] and post-judgment interest on that amount at the rate of 0.16 percent per year pursuant to 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

Dated: March 12, 2013
       Syracuse, New York

*[signature]*
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[2] The Court calculated this figure as follows:

| | | |
|---|---|---|
| (1) | $20,177.58 | fringe benefit contributions and deductions |
| (2) | $57,307.71 | interest |
| (3) | $77,172.71 | liquidated damages |
| (4) | $18,010.20 | audit fees |
| (5) | $73,566.60 | attorney's fees |
| (6) | $ 6,295.48 | costs |

-11-